## APPEAL OF CARL MULLER.

Docket No. 1543.    Submitted October 1, 1925.    Decided June 22, 1926.

Disallowance of the deduction for losses on bad debts sustained upon the evidence.

*Richard S. Doyle, Esq.,* and *L. Dana Latham, Esq.,* for the petitioner.

*R. P. Smith, Esq.,* for the Commissioner.

Before GREEN and LANSDON.

The Commissioner determined a deficiency in income tax for 1918 of $3,575.05, arising by reason of the disallowance of a deduction claimed by the petitioner as his share of a loss alleged to have been suffered by the partnership of Muller Schall & Co. in connection with certain bills of exchange purchased in 1913.

### FINDINGS OF FACT.

The taxpayer was a partner, having an interest of 31 per cent, in the former partnership of Muller Schall & Co., foreign bankers dealing, among other things, in international trade and exchange. This firm had carried on business for a substantial period of time. It was composed of William Schall, an American, owning a 40 per cent interest, Carl Muller, the petitioner, an American, owning a 31 per cent interest, E. Pavenstedt, a German national, owning a 19 per cent interest, and Frederick Muller-Schall, a German national, owning a 10 per cent interest.

In 1913 Muller Schall & Co. purchased through a New York broker two bills of exchange drawn by A. Le More & Co., a New Orleans

manufacturer of barrel staves, upon Gairard Fils, of Marseilles, France, one for 98,706.83 francs and the other for 100,855.38 francs. Both these bills of exchange had bills of lading attached covering shipments of barrel staves.  These bills were accepted by Gairard Fils and were sent at once by Muller Schall & Co., with the documents attached, to De Neuflize & Co., Paris bankers.  The bills are not in evidence and their maturity does not appear.  Gairard Fils went into bankruptcy in 1915.  Upon presentation to Gairard Fils the bills of exchange were dishonored and Muller Schall & Co. were immediately called upon to cover them, and did so.

Some time prior to the bankruptcy of A. Le More & Co. in 1914, Muller Schall & Co. had purchased two checks drawn by Le More, one on the Associated Industrielle Francaise for 50,000 francs and the other on the Banque de Reports du Fonds Public et Depots, Antwerp, for 25,000 francs.  The cost equivalent in dollars of the first check of 50,000 francs was $9,626.96, and that of the second check of 25,000 francs was $4,778.97.

Muller Schall & Co. also purchased a bill of exchange from Le More on the London house of Coulon-Berthoud, but this account is not directly involved in the present proceeding.  The cost of the Coulon-Berthoud check was $16,376.30.

In 1914 Le More & Co. became bankrupt, and thereupon Muller Schall & Co. placed upon its books charges against Le More & Co., as follows:

| | |
|---|---:|
| Coulon-Berthoud item | $16, 369. 12 |
| Le More check, Industrielle, 50,000 francs | 9, 626. 96 |
| Le More check, Antwerp, 25,000 francs | 4, 778. 97 |
| Telegrams | 1. 68 |
| Protest charges, 50,000 francs | 64. 61 |
| Protest charges, Coulon-Berthoud | 7. 18 |
| Protest charges, 25,000 francs | 1. 16 |
| Gairard Fils, 98,706.83 francs | 19, 243. 35 |
| Protest charges | 122. 94 |
| Gairard Fils, 100,855.38 francs | 19, 874. 24 |
| Total | 70, 090. 21 |

In April, 1915, a 12 per cent dividend was received by Muller Schall & Co. from Gairard Fils, through the foreign banking house of John Munro & Co., equivalent to $3,960.54, and this was credited to the account as of December 4, 1915.  The following dividends were received from the representatives of the Le More Co. prior to 1918:

| | | | |
|---|---|---|---:|
| 1915 | 3 | per cent | $2, 100. 43 |
| February, 1916 | 4 | do | 2, 806. 19 |
| June, 1916 | 2 | do | 1, 402. 40 |
| April, 1917 | 3 | do | 2, 103. 58 |
| Total | 12 | do | 8, 412. 60 |

These dividends were credited by Muller Schall & Co. in the account of A. Le More & Co., so that at the beginning of 1918 the balance of that account was $57,717.07.

At the end of the year 1918 Muller Schall & Co. credited this account with "bad debts $40,000," leaving a balance of $17,717.07. Some time thereafter the bookkeeper of Muller Schall & Co. made an "allocation" of the $8,412.60 received from Le More & Co. as liquidating dividends, as follows:

| | |
|---|---:|
| Gairard Fils account | $4, 709. 81 |
| Coulon-Berthoud account | 1, 965. 54 |
| Le More account | 1, 737. 25 |
| Total | 8, 412. 60 |

By reason of the fact that two of the partners of Muller Schall & Co. were German nationals, the firm was black-listed by England and France and was unable after 1914 to communicate in any way with anyone in those two countries. The 12 per cent dividend which it received in 1915 from Gairard Fils was secured through the friendly efforts of John Munro & Co. Up to the end of 1918 they were unable to learn anything about the status of Gairard Fils or of the likelihood of recovery on their account. Meanwhile, the French Government issued a decree of September 27, 1914, prohibiting commercial relations with Germany or any of its nationals. On October 13 there was issued at Bordeaux a "Ministerial Circular" by the Secretary, Minister of Justice, to the Presidents of the Courts of Appeal and General Prosecutors to the Aforesaid Courts, directing the attachment and confiscation of all merchandise, income and property belonging to German nationals. On April 10, 1918, the Prosecutor of the French Republic signed the following document:

*To Mr. President of Civil Tribunal of Marseille.*

The undersigned Prosecutor of the Republic begs to state that the Firm Muller Schall & Co., of New York, has been admitted to claim, in the liquidation *Gairard Fils* a credit of Fcs. 200,852.23. That, in April, 1917, Messrs. Pavenstedt and Ferdinand Muller Schall, German subjects, retired from the firm Muller Schall & Co. which was replaced by the new firm Schall, Muller, Hanway, Welty and Paine, solely made up of Americans.

That the new firm owes a debt of Fcs. 200,852.23 to the partners of the old firm who have retired, Messrs. Pavenstedt and Ferdinand Muller Schall.

That, under these conditions, there is cause to demand the seizure of the part that could eventually be returned in view of their claim against the new firm, to Messrs. Pavenstedt and Ferdinand Muller Schall in the sum to be recovered by the new firm in the liquidation of Gairard Fils. For this reason the petitioner demands that it please Mr. President to command that the credit balances above mentioned be confiscated, designate to this effect an administrator, determine the powers given to him and the rules of his administration. Order that the decree shall be announced by the administrative authorities to

the administrator of Custodian which will be designated for Messrs. Pavenstedt and Ferdinand Muller Schall as well as all other necessary measures.

Made at the Court of Justice in Marseille, the 10th of April 1918.

The Prosecutor of the Republic.

(Signed)    MASSOT.

Thereafter, on April 16, 1918, the following decree was made:

We, President of the Civil Tribunal of Marseille, Chevalier de la Legion d'Honneur, in view of the request presented by Mr. Prosecutor of the Republic and his motives,

Whereas the Firm. Muller Schall & Co. of New York has been permitted to claim in the liquidation Gairard Fils a credit balance of two hundred thousand eight hundred fifty two francs 23 centimes.

Whereas in April, 1917, Messrs. Pavenstedt and Ferdinand Muller Schall, German citizens retired from the firm Muller Schall & Co., which was replaced by the new firm Schall, Muller, Hanway, Welty and Paine, solely made up of Americans, That the new firm owing a debt of 200,852 francs 23 centimes to the partners of the old firm, there is cause to demand the seizure of the part that could eventually be returned in view of their claim against the new firm, to Messrs. Pavenstedt and Ferdinand Muller Schall in the amount to recover in the liquidation Gerard Fils

BY THESE PRESENTS

Decree that the credit balances mentioned above be confiscated.

Name Mr. Roche, Receiver of the Registry in Marseille, sequestrator of the amounts that could be returned to Messrs. Pavenstedt and Ferdinand Muller Schall in the liquidation Gairard Fils:

Say that the present decree will be notified by the administration authorities to Mr. Roche, Sequestrator, Messrs. Pavenstedt and Ferdinand Muller Schall and to whom it may concern.

Order the provisional execution of the present decree at once before registration and its deposit with the Tribunal Civil of Marseille, after execution.

Made in our office at the Court House In Marseille the sixteenth of April one thousand nine hundred and eighteen.

(Signed)    POULLE.

In 1919 the two American partners of Muller Schall & Co. were permitted by the French Government to institute a proceeding in the French courts to establish their claims, and in 1921 they recovered from the French Government their percentage of the dividends on the Gairard account, equivalent to their 71 per cent interest in Muller Schall & Co. This amounted to $13,037.93.

In 1920 a 2 per cent dividend was received from Le More & Co., amounting to $1,403.80, and in 1921 a ⅖ per cent dividend was received amounting to $280.76.

OPINION.

STERNHAGEN: In 1918 Muller Schall & Co. were settling up their affairs after the dissolution of 1917. Pavenstedt and Muller-Schall, who were German nationals, had withdrawn from the business and

the firm had been reorganized without them. They still had an interest in the Le More, Gairard and Coulon-Berthoud transactions.

At that time there appeared on the books (whether of the old firm or the new is in doubt), a debit balance against A. Le More & Co., including the five transactions, of $70,090.21. At the end of 1918 the bookkeeper charged off, or, as he expressed it, "booked off" $40,000 of this amount as a "bad debt." This round figure is now alleged to be an estimate of the loss attributable to all but the Coulon-Berthoud transaction. This we can not adopt. The amount of the Coulon-Berthoud account was clearly shown by the books to be $16,369.12 plus $7.18 protest charges, or $16,376.30 in all. If the intention were to regard the remaining four items as wholly worthless and lost, this could have been recorded accurately and probably would have been. The writing off of $40,000 was, we think, not accompanied by the ratiocination that counsel would attribute to it. It was merely a general writing down of the account because of the uncertainty which existed in the extent of its recovery.

The statute does not permit the deduction of doubtful debts partly written off, *Steele Cotton Mill Co.*, 1 B. T. A. 299, nor of possible or probable losses. The loss must be actually sustained in the taxable year to be deductible. The petitioner, feeling the difficulty of his original action in calling the charge a bad debt, urged its deductibility as a loss. Finally, he expresses indifference as to the category of the deduction, claiming it on either ground. He is in a dilemma. If he claims a bad debt, it must be proven to be ascertained as wholly worthless and charged off in the taxable year. The fact of worthlessness is perhaps softened by the proof of *bona fide* and sensible ascertainment. On the other hand, claiming a loss he must prove as a fact that it was actually sustained within the year. The sustained loss and not his ascertainment is the statutory factor.

Aside from being a partial charge-off, we are of opinion that in 1918 the outlook was not dark enough to justfy the view that the debt or any particular item was worthless. Le More & Co. was still in process of liquidation and with a prospect of further dividends. What its financial condition was does not appear. It is merely said that the attorney thought it was worthless, and that he was surprised when a 2 per cent and later a ⅖ per cent dividend were paid. The bookkeeper understood that a 2 per cent dividend might be expected. This is not probative of worthlessness. *Alemite Die Casting & Mfg. Co.*, 1 B. T. A. 548.

As to recovery from Gairard Fils on the two bills which they had accepted, we know only that in 1918 they were bankrupt in France, that they had paid a 12 per cent dividend through John Munro & Co, and that rumor had it that France had sequestered or confiscated

tho account. What this meant in 1918 no one was certain. It was not to be supposed that France would confiscate the property of American citizens, however it might treat that of enemy nationals. The present petitioner believed this, for subsequently he proceeded in France to assert his right and in 1921 recovered his full claim, although in depreciated francs. Thus at all times his claim was protected, he had the right of recovery, and in 1918, instead of a worthless debt or a substantial loss, he had a reasonable prospect of substantial recovery.

It is argued that this was a partnership matter, and as such it must stand or fall. This is only partly true. The ultimate French allowance was expressly prorated in accordance with the interest of the American partners, and there is no reason given why Muller did not get his full claim except for the drop in the value of the franc. It could not in the face of this be assumed that the partnership as a whole was to be treated as an enemy claimant and its claims wholly wiped out, including the share of allied citizens.

We therefore sustain the Commissioner's disallowance of the deduction in 1918.

*Judgment for the Commissioner.*

GREEN dissents.